**COURT OF COMMON PLEAS OF INDIANA COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **DAVID E. KIMMEL,**<br>**MICHAEL T. KIMMEL, and**<br>**KIMMEL BROTHERS FARMS, LLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ELDERTON STATE BANK,**<br>**FARM SERVICE AGENCY,**<br>**RAY SLEPPY,**<br>**DAVID POORBAUGH, and**<br>**CHARLES GLASSIER,**<br><br>**Defendants.** | ) | **No.** 10927 CD 2020<br><br>**JURY TRIAL DEMANDED** |

INDIANA COUNTY PROTHONOTARY AND CLERK OF COURTS
2020 MAY 18 PM 3:19

**NOTICE TO DEFEND**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiffs. You may lose money or other rights important to you.

YOU MUST TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

INDIANA COUNTY SHERIFF
2020 MAY 22 AM 11:25

Court Administrator
Fourth Floor, Courthouse
Indiana, PA 15701
(412) 465-3955

Laurel Legal Services Inc.
730 Church St.
Indiana, PA 15701
(412) 349-3440



**IN THE COURT OF COMMON PLEAS OF INDIANA COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **DAVID E. KIMMEL, MICHAEL T. KIMMEL, and KIMMEL BROTHERS FARMS, LLC,** | ) | **No.** 10927 CD 2020 |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **ELDERTON STATE BANK, FARM SERVICE AGENCY, RAY SLEPPY, DAVID POORBAUGH, and CHARLES GLASSIER,** | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

**COMPLAINT**

AND NOW comes the Plaintiffs, David Kimmel, Michael Kimmel, and Kimmel Brothers Farms LLC, by and through their attorneys, THE LINDSAY LAW FIRM, P.C., Alexander H. Lindsay, Jr., Esquire, and Max B. Roesch, Esquire, and files the following Complaint, and, in support thereof, avers as follows:

**PARTIES**

1. The Plaintiff David E. Kimmel is an adult individual who resides at 251 Corbett Avenue, P.O. Box 96, Plumville, PA 16246 and who is a 25 percent owner of Kimmel Brothers Farms, LLC (hereinafter "Kimmel Brothers").

2. The Plaintiff Michael T. Kimmel is an adult individual who resides at 362 Sinktown Road, Home, PA 15747 and who is a 50 percent owner of Kimmel Brothers.

3. Kimmel Brothers Farms, LLC, a Limited Liability Company, owns and operates a dairy farm.

4. The Defendant Elderton State Bank is a state bank located at 143 North Main Street, Elderton, PA 15736.

5. The Defendant, Ray Sleppy was at all times pertinent to this complaint, Chief Executive Officer and Loan Officer at Elderton State Bank.

6. The Defendant, Farm Service Agency, (hereinafter "FSA") is an agency of the United States Department of Agriculture (hereinafter "U.S.D.A.") and, among other things engages in guaranteed farm loan programs to help family farmers and ranchers to obtain loans from U.S.D.A. approved commercial lenders at reasonable terms to buy farm land or finance agricultural production.

7. The Defendant, David Poorbaugh is and was at all times pertinent to this complaint, the Chief Loan Officer of FSA for the State of Pennsylvania.

8. The Defendant, Chuck Glassier is and was at all times pertinent to this complaint, the Chief Executive Director of FSA in Indiana County and was indirectly involved in the loan process of FSA guarantees.

## STATEMENT OF FACTS

### *The Plaintiffs farm expansion*

9. The Plaintiffs herein own a farm that was purchased from Robert and Doris Kimmel who are David E. Kimmel and Michael T. Kimmel's father and mother.

10. In 2013 Kimmel Brothers was milking 100 cows and cash grain farming approximately 1200 acres.

11. While milking 100 cows and cash grain farming, Kimmel Brothers was not able to function efficiently, specifically:

a. They lacked an adequate drying system and grain storage to allow them to market grain properly; and,

b. There were empty stalls in their barns and they needed to update their bulk tank and other milking equipment;

12. As a result of the foregoing Kimmel Brothers planned an expansion of their operation.

13. The expansion included a new barn, water beds, fans, ventilation, and a bulk milk tank to improve, not only the quantity of milk production but also the quality of milk produced.

14. In order to make this expansion feasible, Plaintiffs purchased an additional 100 head of dairy cattle.

***Financing Expansion***

15. In order to finance the aforesaid expansion, Kimmel Brothers obtained a loan from Elderton State Bank guaranteed by FSA.

16. Elderton State Bank, as a USDA – Approved Commercial Lender, is a bank that has substantial experience in making farm loans, and has knowledge of the risks involved in farming, particularly dairy farming.

17. More specifically dairy farming is subject to conditions over which the dairy farmer has no control which include the following:

a. Weather conditions which can profoundly affect the dairy farmers' ability to plant and harvest crops necessary to feed the dairy cattle involved;

b. Fluctuations in milk pricing over which the dairy farmers have no control.

18. In a FSA guaranteed loan, the risk is carried primary by the farmers in question and FSA in that a substantial amount of these loans are guaranteed by FSA.

19. On April 28, 2015 the Kimmel Brothers received a FSA guaranteed loan for $330,000 through Elderton State Bank for the aforementioned expansion of the operation. A copy of the loan agreement is attached hereto as Exhibit "A".

20. This loan was approved by the Defendant Ray Sleppy.

21. The loan in question was 90 percent guaranteed by FSA and that portion was approved by the Defendant David Poorbaugh.

22. Charles Glassier was indirectly involved in the loan process.

23. On May 15th a second phase of this loan was funded in the amount of $251,500. A copy of the loan agreement is attached hereto as Exhibit "B".

***The Kimmels' Financial Crush of 2015***

24. In 2015, Milk prices on a nationwide basis began to plummet substantially curbing the Plaintiffs income.

25. 2015 was a particularly bad year with regard to weather.

26. More specifically during the Spring planting season the Plaintiffs were subject to rain on almost a daily basis and as a result the soil was untillable and the Spring planting was limited.

27. Consequently, the Kimmel Brothers were dealt with a double disaster, namely falling milk prices and crop failure.

28. As a result of the aforementioned financial problems, the Kimmels became concerned about making payments on the aforementioned loans.

29. In 2015 the Plaintiff Kimmel Brothers, contacted Elderton State Bank about restructuring their loan so that they could survive that year.

30. They were informed by Defendant Sleppy that the Farm Service Agency had issues with guaranteeing "old loans" and FSA also had a problem with regard to how collateral between the FSA and Elderton State Bank was adjusted.

31. It was at this point that FSA started being very difficult for the Plaintiffs to work with.

32. As a result, the Plaintiffs efforts to restructure their loan was delayed by the FSA and Elderton State Bank.

33. As a result of the problems stated in the year 2015, the Plaintiffs struggled to get enough money to properly plant their crops in the Spring of 2016.

34. Meanwhile, Elderton State Bank continued to delay in restructuring their loan.

35. In June of 2016 the Defendant Elderton State Bank put them on an interest only payment of their loans, still there was no significant restructuring of their loan.

36. In April of 2017, the Plaintiffs loan became delinquent with FSA.

37. In the spring of 2017, Chuck Glassier began giving the Plaintiffs difficulty with pursuing a crop insurance claim which claim would have provided them with significant income which could have been applied to their loans.

38. On June 6, 2017 the Plaintiff, David E. Kimmel, was run over and trampled by a bull and broke his neck and was therefore limited in his ability to work on the farm.

39. On June 9, 2017 Plaintiffs submitted a new plan due to the near death experience of the Plaintiff David E. Kimmel.

40. It was not until December of 2017 that the Plaintiff met with the Defendant David Poorbaugh, who informed them that their plan for reconstruction was "non-cash flowable" and told them that they should file for bankruptcy.

41. As a result of the Defendant David Poorbaugh's position, on January 26, 2018 Plaintiffs sought mediation so that FSA and Elderton State Bank could sit down with them and determine an acceptable cash flow to restructure their loan.

42. In September of 2018, the Plaintiffs' loans became delinquent with Elderton State Bank.

43. In October of 2018 the Plaintiffs took five years' worth of plans to Krystal Pizarchik, a FSA loan officer, to load into FSA system.

44. Krystal Pizarchik called Plaintiffs into her office to inform them that David Poorbaugh had put the purchase plan under water in excess of $300,000.

45. The Plaintiff David Kimmel and Krystal Pizarchik sat down in her office and found numerous typographical errors, mistakes and fraudulent numbers which were apparently to make their plan not cash flow.

46. When these errors were fixed it did cash flow.

47. When the Plaintiff David Kimmel called David Poorbaugh and informed Poorbaugh that their plan cash flowed he became rude and indicated his unhappiness with the Plaintiffs.

48. The Mediation never occurred, instead, the representatives for Elderton State Bank and FSA wasted precious time going back and forth eventually denying the Kimmel Brothers plan without mediation.

49. The plan submitted by the Plaintiff Kimmel Brothers included Elderton State Bank restructuring all Kimmel Brothers farm debt with FSA as guarantors. This plan was later denied.

50. Finally, on November 15, 2018 approximately one year later, the Plaintiffs obtained their mediation through David Poorbaugh of FSA who created a new plan.

51. The plan created by Poorbaugh put Kimmel Brothers in excess of $600,000 "underwater".

52. In order to make the plan created by Poorbaugh fail to "cash flow", Poorbaugh took income off grains, did not change expenses and used the Kimmel Brothers average number which was inaccurately put in a negative light.

***Actions taken by Elderton State Bank***

53. In March of 2019 Elderton State Bank levied on the milk checks of the Plaintiffs Kimmel.

54. In April of 2019 the Indiana County Sheriff's Department levied on Kimmel cattle and equipment.

55. On April 30, 2019 Plaintiff David and Michael Kimmel had a meeting with Gary Groves, the State Executive Director of FSA, relating that they would like to have FSA and Elderton State Bank come to the table together.

***Chuck Glassier interfers with KB in the contractual relationship with Elderton State Bank***

56. After April 2019 the Defendant Glassier began calling the Sheriff's Office demanding that the Plaintiffs entire farm be levied.

57. On May 1, 2019 the Plaintiffs called Ray Sleppy about setting up a meeting with the Kimmel Brothers and Elderton State Bank to "bring everyone to the table".

58. The Defendant, Ray Sleppy seemed to be very open to this in order to remedy the Plaintiff's financial situation.

59. The Plaintiff David Kimmel called Gary Groves, FSA's Director for Pennsylvania, to advise him that there was a meeting with Ray Sleppy from Elderton State Bank.

60. When Charles Glassier stopped at the Kimmel's farm he complained to the Plaintiffs Kimmel Brothers that he had been "thrown under the bus" after comments were made about his rushing the Sheriff to levy the Plaintiffs cattle, equipment and farm.

61. In the conversation the Defendant Glassier denied ever making that comment or calling the Sheriff's Office.

62. The Plaintiff David Kimmel informed Glassier they were in direct contact with the Sheriff's Deputy that had spoken with Glassier.

63. At that meeting, the Plaintiff David Kimmel let Glassier know that he had arranged a meeting with Elderton State Bank which was to take place later that morning.

64. Within 15 minutes of the Defendant Glassier leaving the Plaintiffs farm, the Plaintiff David Kimmel received a text message from Ray Sleppy stating that there could no longer be a meeting and any other communication had to be through their respective attorneys.

65. Plaintiffs bankruptcy attorney Michael Heney spoke with Elderton State Bank's attorney and was informed that contact between the Plaintiffs and Gary Groves had gone badly.

66. The Plaintiff then called Gary Groves to tell him that their meeting had been abruptly canceled with Elderton State Bank.

67. In the course of that conversation the Plaintiff also informed Gary Groves that their attorney had spoken with the bank's attorney and had been informed that it was Grove's opinion that the meeting had not gone well.

68. Gary Groves expressed surprise in that he had never spoken to Chuck Glasser or Elderton State Bank.

***The Suspect Sheriff's Sale***

69. On June 20, 2019, the Sherriff sale advocated by Glassier took place on the Plaintiff's cattle and equipment.

70. It has been the Plaintiff's experience that the highest price for cattle may be obtained when the cattle are sold individually or in small lots.

71. On June 20th, the Sheriff explained the rules of this particular, and very unusual, sale.

72. At the Sheriff sale the Defendant Elderton State Bank credit bid the cattle at $165,000 for the entire lot of cattle and it was explained pursuant to the rules of the sale that anybody else who wanted to bid on cattle had to bid $10,000 over that price.

73. Many of the prospective bidders of the sale, did not come to buy the entire herd, but rather wanted one or more cattle to supplement their individual herds.

74. An individual by the name Jake Dressler bought the entire herd and took them away that day.

75. There was an approved arrangement between the Elderton Sate Bank and Dressler that Dressler would get the cattle.

***COUNT I***

***David E. Kimmel, Shannon J. Kimmel, Michael T. Kimmel t/d/b/a Kimmel Brothers Farms, LLC v. Elderton State Bank, Ray Sleppy, Farm Service Agency, David Poorbaugh, Charles Glassier***

**Breach of Contract; Breach of Duty of Good Faith and Fair Dealing**

76. The prior paragraphs are hereby incorporated by reference as though set forth in their entirety.

77. Every contract imposes a duty of good faith and fair dealing and neither a lender nor borrower can do anything to deprive the other of the benefits of the agreement.

78. In Pennsylvania, a good faith and fair dealing claim is considered a breach of contract claim and typically a loss is when the borrower alleges that the member violated a term that is not expressly set forth, but is implied in the loan agreement.

79. Plaintiff alleges that there is an implied term of their loan agreements with Elderton State Bank and FSA requiring that the lender and the guarantor act in good faith in administering the Plaintiffs loans with Elderton State Bank.

80. The Defendants herein breached their duty of good faith and fair dealing in the following respects:

a. In failing to attempt to modify or restructure the Plaintiff's existing loans with Elderton State Bank when conditions, foreseeable to the lender, and beyond Plaintiffs control, placed Plaintiffs in a position where the restructure of their loans was necessary to avoid a financial collapse;

b. Failing to consider Plaintiffs applications for restructuring their loans without delay being fully aware that their delays were pushing the Plaintiffs to financial

collapse;

c. In changing the Plaintiffs application for restructuring of their loans by inserting misleading figures tending to indicate that the Plaintiffs' plans would not cash flow, well knowing at the time that these applications would cash flow if they were not unilaterally changed by FSA Administrators.

d. In accelerating the Sheriff's sale on the Plaintiffs equipment and livestock, forcing and unnecessarily accelerating the Sheriff sale of the Plaintiffs equipment and livestock forcing the Plaintiff into bankruptcy.

e. In establishing a procedure to Sheriff sale which ensured that the Plaintiffs would receive a lesser value for their cattle than they were actually worth.

81. As a result of the aforementioned breach of duty of good faith and fair dealing, the Plaintiff suffered the following damages:

a. Lost cows, equipment, and farm

b. Lost their business

c. Lost business opportunity for growth

d. Lost future income opportunities

e. Lost personal investments from other family members and neighbors

f. Lost wages

WHEREFORE, showing these things Plaintiffs seek an amount of money in excess of the arbitration limit and an injunction preventing forclosure sale or sheriff's sale of their farm.

**COUNT II**

***David E. Kimmel, Shannon J. Kimmel, Michael T. Kimmel t/d/b/a Kimmel Brothers Farms, LLC v. Elderton State Bank, Ray Sleppy, Farm Service Agency, David Poorbaugh, Charles Glassier***

**Breach of Contract; Promissory Estoppel**

82. The prior paragraphs are hereby incorporated by reference as though set forth in their entirety.

83. Between 2015 and 2019, Plaintiffs repeatedly attempted to restructure their loans with Defendant Elderton.

84. Defendants repeatedly represented to Plaintiffs that a restructure of the loans would be acceptable so long as the restructuring plan would cash flow.

85. Plaintiffs relied on Defendants' representations regarding restructuring their loans, and submitted multiple plans that cash flowed.

86. Defendants denied each of the Plaintiffs' plans, using innacurate numbers and calculations to falsely claim that the plans submitted by Plaintiffs did not cash flow and were underwater.

87. As a result, Defendants delayed any restructuring of Plaintiffs' loans until the Plaintiffs were forced into bankruptcy.

88. As a result of the aforementioned reliance on Defendants' representations, the Plaintiffs suffered the following damages:

g. Lost cows, equipment, and farm

h. Lost their business

i. Lost business opportunity for growth

j. Lost future income opportunities

k. Lost personal investments from other family members and neighbors

l. Lost wages

89. Plaintiffs will likely suffer further damages as result of Defendants misreprentations, including the potential loss of real property.

WHEREFORE, showing these things Plaintiffs seek an amount of money in excess of the arbitration limit and an injunction preventing foreclosure sale or sheriff's sale of their farm.

**COUNT III**

***David E. Kimmel, Michael T. Kimmel***
***t/d/b/a Kimmel Brothers Farms, LLC v. FSA, David Poorbaugh***

**Violation of the Credit Repair Organization Act**

90. The prior paragraphs are hereby incorporated by reference as though set forth in their entirety.

91. Under the Credit Repair Organizations Act, no person may make any statement for the purpose of concealing adverse information that is accurate and not obsolete to any person to whom the consumer has applied or is applying for an extension of credit. 15 U.S.C. § 1679b(a)(2)(B)(ii).

92. At all relevant times, Defendant Farm Services Agency was a "credit repair organization under the Credit Repair Organizations Act.

93. At all relevant times, Defendant David Poorbaugh was an agent of the Farm Services Agency.

94. Defendant Poorbaugh revised numbers and calculations, and omitted data and calculations in plans submitted by Plaintiffs.

95. The intent and effect of Defendant Poorbaughs revisions was to make the plans not "cash flow."

96. As a result of Defendant Poorbaugh's manipulation of data, Plaintiffs' loans appeared to be underwater.

97. Further, as a result of Defendant Poorbaugh's manipulation of data, Plaintiffs were unable to restructure their loans and were forced into bankruptcy.

98. Plaintiffs suffered damages as a result of Poorbaugh's manipulations.

## COUNT IV

***David E. Kimmel, Michael T. Kimmelt/d/b/a Kimmel Brothers Farms, LLC v. Charles Glassier***

**Intentional Interference with a Contractual Relationship**

99. The prior paragraphs are hereby incorporated by reference as though set forth in their entirety.

100. Plaintiffs were engaged in a contractual relationship with Defendant Elderton State Bank.

101. Defendant Charles Glassier interfered with the contractual relationship between Plaintiffs and Elderton State Bank by falsely claiming to Defendant Sleppy that Gary Groves had negative interactions with the Plaintiffs and that the "meeting had not gone well."

102. Defendant Charles Glassier lacked any privilege or justification to interfere in the contractual relationship between Plaintiffs and Elderton State Bank.

103. Defendant Glassier's interference caused harm in that it delayed potential restructuring of Plaintiffs loans, forcing them into bankruptcy.

WHEREFORE, Plaintiff demands judgment against the Defendant in an amount in excess of the arbitration limit, plus costs and such relief as the Court may deem proper including but not limited to punitive damages. A JURY TRIAL IS DEMANDED.

Respectfully submitted:

THE LINDSAY LAW FIRM, P.C.

Alexander H. Lindsay, Jr.
Attorney for the Plaintiffs

PA ID No 15088

110 East Diamond Street, Suite 301
Butler, PA 16001
(724) 282-6600

Max B. Roesch
Attorney for the Plaintiffs

PA ID No 326577

110 East Diamond Street, Suite 301
Butler, PA 16001
(724) 282-6600

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the United Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

Signature: ______________________

Name: Alexander H. Lindsay, Esquire

Attorney No. 15088

**IN THE COURT OF COMMON PLEAS OF INDIANA COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **DAVID E. KIMMEL, MICHAEL T. KIMMEL, and KIMMEL BROTHERS FARMS, LLC,** | ) | **No.** 10927 CD 2020 |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **ELDERTON STATE BANK, FARM SERVICE AGENCY, RAY SLEPPY, DAVID POORBAUGH, and CHARLES GLASSIER,** | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

INDIANA COUNTY
PROTHONOTARY AND
CLERK OF COURTS
2020 MAY 18 PM 3: 19

**NOTICE TO DEFEND**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiffs. You may lose money or other rights important to you.

YOU MUST TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Court Administrator
Fourth Floor, Courthouse
Indiana, PA 15701
(412) 465-3955

Laurel Legal Services Inc.
730 Church St.
Indiana, PA 15701
(412) 349-3440